```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

_____
                                   )
JOHNAVON SAINT-VIL,                )
                                   )
            Petitioner,            )
                                   )   CIVIL ACTION
         v.                        )   No. 22-10574-WGY
                                   )
NELSON ALVES,                      )
                                   )
            Respondent.            )
_____)

YOUNG, D.J.                                         June 7, 2023

**MEMORANDUM AND ORDER**

**PETITION FOR WRIT OF HABEAS CORPUS, PURSUANT TO
28 U.S.C § 2254**

I.  **INTRODUCTION**

   **A. Procedural History**

   Following a jury-waived trial in the Superior Court of Massachusetts sitting in and for the County of Suffolk, Johnavon Saint-Vil ("Saint Vil") was convicted of two counts of mayhem, three counts of indecent assault and battery on a child, and five counts of assault and battery by means of a dangerous weapon.  Resp't's Supplemental Answer to Pet. ("SA") 8-11, 297, ECF No. 25.  On Counts one and two, Saint-Vil was sentenced to seven-to-ten years in prison.  Id. at 11.  On Counts eleven, twelve, and thirteen, Saint-Vil was sentenced to ten-to-twelve years in prison.  Id. at 10.  On Counts three through seven,

[1]

Saint-Vil was sentenced to eight years of probation to run after the sentence. Id. at 11.

Saint-Vil appealed his conviction -- filing multiple motions for a new trial claiming ineffective assistance of counsel. Pet. Relief Writ of Habeas Corpus ("Pet.") 6-8, ECF No. 10. The motions were denied in May 2018 and October 2019. SA 11-15. On January 18, 2022, the Massachusetts Appeals Court ("Appeals Court") affirmed the denial of the motions and upheld Saint-Vil's conviction. Commonwealth v. Saint-Vil, 100 Mass. App. Ct. 1120 at *1 (2022). On August 4, 2021, Saint-Vil was denied further state-appellate review with the Massachusetts Supreme Judicial Court ("SJC"). SA 19, 300, 326.

On August 10, 2022, Saint-Vil filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet., ECF No. 10. The parties have briefed the issues. See Resp't's Answer to Pet'r's Pet. for Writ of Habeas Corpus, ECF No. 24; SA, ECF No. 25; Pet'r's Mem. Law Supp. Pet. for Writ of Habeas Corpus ("Pet'r's Memo"), ECF No. 30; Resp't's Mem. Law in Opp'n to Pet. for Writ of Habeas Corpus ("Resp't's Opp'n"), ECF. No. 33; Reply Br. Supp. Pet. for Writ of Habeas Corpus ("Reply"), ECF. No. 34.

**B. Factual Background**

The relevant facts below come from the Appeals Court's opinion in the criminal appeal. Saint-Vil, 100 Mass. App. Ct. at *1. Under section 2254, this Court will presume the State court's factfinding to be correct. 28 U.S.C. § 2254(e)(1).[1] The petitioner has the burden of rebutting this presumption by clear and convincing evidence. Id. "If the Supreme Judicial Court of Massachusetts, the Commonwealth's highest court, has declined to review the conviction, then we can rely upon the '"the last reasoned decision" issued by the Massachusetts Appeals Court' (MAC) in crafting the factual and procedural narrative." Strickland v. Goguen, 3 F.4th 45, 47-48 (1st Cir. 2021) (quoting King v. MacEachern, 665 F.3d 247, 252 (1st Cir. 2011)).

The children involved, named Marco and Andrea for the purposes of the case, lived with their mother in their maternal grandparents' home. Saint-Vil, 100 Mass. App. Ct. at *1. The mother began dating Saint-Vil and moved her children into an apartment with Saint-Vil in 2012. Id. In 2013, Marco informed his grandfather that Saint-Vil had whipped him and his sister,

---

[1] This, of course, is not a "true" presumption at all. See WILLIAM G. YOUNG, INFERENCES, PRESUMPTIONS AND PRIMA FACIE EVIDENCE, IN REFLECTIONS OF A TRIAL JUDGE: A COLLECTION OF LECTURES BY THE HONORABLE WILLIAM G YOUNG 30, 31-33 (MCLE, 1998). Rather, it shifts to the petitioner the full burden of proof, indeed a heightened burden of proof.

Andrea, with a belt.  Id.  After confronting Saint-Vil, and noticing additional disturbing injuries, the grandfather and mother decided to move Marco and Andrea back to their maternal grandparents' home.  Id.  The grandfather, however, did not report Saint-Vil to the authorities.  Id.

Later a pediatrician noted multiple burns apparently inflicted by lit cigarettes.  Id.  "On November 7, 2013, a sexual assault nurse examiner (SANE) performed an examination of the children and took photographs of the injuries. Both children had 'numerous healed burn marks' on their bodies, as well as other marks that appeared to be cuts or puncture wounds."  Id.

At trial, Saint-Vil's sole defense was that a third party inflicted the abuse on the children.  Id.  Importantly for this case,

> Trial counsel consulted with a medical expert prior to trial in an attempt to determine, from the stage of healing represented in the photographs, when the burns had been inflicted. Because the expert "was not able to offer a helpful opinion that would have excluded [the petitioner] as the potential source of the injuries," trial counsel did not retain the expert for trial. Instead, trial counsel cross-examined the Commonwealth's expert, eliciting from her, in part, an opinion that the November 7, 2013 SANE photographs "depicted wounds that had been healed -- had been healing at least for five to seven days." Trial counsel argued that this expert testimony established that the children had been injured after they moved in with their grandparents on October 4, 2013, and they no longer had any contact with the [petitioner]. He

[4]

>    highlighted the close relationship between the
>    grandparents and the children, arguing that the family
>    was "scapegoat[ing]" the [petitioner] because he was
>    "expendable."

Id.

## II. ANALYSIS

Saint-Vil's petition for a writ of habeas corpus ultimately fails because the Appeals Court's application of Strickland, an already general and deferential standard, was reasonable.

Saint-Vil's petition proceeds from the single theory that his attorney rendered ineffective assistance of counsel by failing to retain an expert witness to testify regarding when certain burn wounds might have been inflicted. Pet'r's Memo 1. Saint-Vil's argument is that the children were burned after his last contact with them on October 4, 2013, and an expert could have testified that the wounds, as photographed on November 7, 2013, were less than 30 days old. Pet'r's Memo 7-8.

Saint-Vil, however, was neither afforded constitutionally deficient counsel because his attorney made tactical decisions regarding expert witnesses nor was he prejudiced by the alleged errors of his counsel because the "sole theory of the defense" was introduced at trial through cross-examination and the prosecution proved their case primarily through victim testimony. Pet'r's Memo 1.

**A. Standard of Review**

Saint-Vil filed his petition under 28 U.S.C. § 2254. Pet. 1. This statute outlines the standards a person in state custody must meet for a writ of habeas corpus to be granted. The statute states in part,

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
>> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1). Saint-Vil challenges his custody under section (d)(1) claiming that his custody is in violation of the Sixth Amendment and its progeny because he received ineffective assistance of counsel at trial. Pet'r's Memo 1. Specifically, Saint-Vil argues that by "fail[ing] to retain 'an absolutely necessary' medical expert to support the sole theory of defense" his attorney violated the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Id.

The climb Saint-Vil faces is steep -- and indeed proves too steep to surmount in this case. The burdens created by section 2254 are designed to ensure that "federal habeas relief will be

[6]

granted only in cases in which all fairminded jurists would agree that a final state court decision is at odds with the Supreme Court's existing precedents." Bebo v. Medeiros, 906 F.3d 129, 134 (1st Cir. 2018) (citing Harrington v. Richter, 562 U.S. 86, 102 (2011)). A federal court "may not overrule a state court for simply holding a view different from its own." Id. (quoting Mitchell v. Esparza, 540 U.S. 12, 17 (2003)). A state court "decision is contrary to clearly established federal law" only if it either "announces a rule of law that directly contradicts Supreme Court precedent or . . . reache[s] a different result than the Supreme Court on materially indistinguishable facts." Cronin v. Comm'r of Prob., 783 F.3d 47, 50 (1st Cir. 2015) (citing Williams v. Taylor, 529 U.S. 362, 412-13 (2000)). Habeas corpus is meant to protect petitioners from a near-total breakdown in the state criminal justice system. See Harrington, 562 U.S. at 102 (citing Jackson v. Virginia, 443 U.S. 307, 322 n.5 (1979)). It is not meant as a "substitute for ordinary error correction through appeal." Id. at 102-03.

### B. The Massachusetts Appeals Court's application of Strickland was reasonable.

The Appeals Court's application of Strickland to the behavior alleged in the petition was reasonable. Even were this Court to review under the singularly deferential standard of

[7]

Strickland, there was no viable ineffective assistance of counsel claim because defense counsel was not constitutionally deficient and, even if counsel was deficient, the petitioner was not prejudiced because of counsel's actions.  This Court reviews, however, under the doubly deferential standard set out by section 2254.

Strickland is the clearly established federal law governing an ineffective assistance of counsel claim.  See Williams v. Taylor, 529 U.S. 362, 391 (2000) ("It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'")  Strickland instructs that review of "counsel's performance must be highly deferential."  466 U.S. 689.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Since this case comes to the Court as a section 2254 petition, the question is not whether there was a violation of Strickland, but rather this Court must review whether the Appeals Court's **application** of Strickland was unreasonable.  See

[8]

Harrington, 562 U.S. at 87-88.  This type of review -- whether the state court has unreasonably applied the already deferential standard of Strickland -- has been deemed "doubly deferential" due to the dual-nature of deference that must be surmounted in order for a petitioner to have a viable claim.  See Cullen v. Pinholster, 563 U.S. 170, 190 (2011).  The Appeals Court reasonably applied Strickland, or the state-version thereof,[2] to the facts alleged.

In Strickland, the Supreme Court articulated a test for review of ineffective assistance of counsel, which is part and parcel to the right to counsel itself.  See 466 U.S. at 687; see also McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (recognizing right to counsel is right to effective assistance of counsel); see also Gideon v. Wainwright, 372 U.S. 335 (1963) (ruling Sixth Amendment provides criminal defendants with right to counsel).  The Court in Strickland formulated a two-part test for a claim of ineffective assistance of counsel.  See 466 U.S. at 687.  First, the petitioner bears the burden of showing that counsel was constitutionally deficient.  See id.  Second, the petitioner bears the burden of showing "that the deficient

---

[2]   The Appeals Court applied the standard set out in Commonwealth v. Saferian, 366 Mass. 89 (1974).  This standard has been recognized by the First Circuit as the "functional equivalent" of Strickland.  Lynch v. Fiacco, 438 F.3d 35, 48 (1st Cir. 2006).

performance prejudiced the defense." Id.  Unless a petitioner can prove both deficiency and prejudice, there is no cognizable claim for ineffective assistance of counsel.  See id.

First, Saint-Vil's attorney was not constitutionally deficient. Saint-Vil's counsel made a tactical decision to focus resources on cross-examination after investigating, and failing to find, an expert beneficial to the defense.  Second, Saint-Vil was not prejudiced because the "sole theory" of the defense was elicited through cross-examination of the Commonwealth's expert at trial and the prosecution proved its case primarily through victim testimony, not expert witness testimony.  For these reasons, the Appeals Court did not unreasonably apply Strickland to the facts alleged and Saint-Vil's petition will be denied.

> **1. The Appeals Court was reasonable in concluding that counsel's decisions were not constitutionally deficient.**

The Appeals Court was reasonable in concluding that counsel's decision to focus efforts on cross-examination of the Commonwealth's expert after a fruitless search for an adequate witness was a tactical decision that was not constitutionally deficient. Saint-Vil, 100 Mass. App. Ct. at *2.  Saint-Vil argues that his counsel was constitutionally deficient because counsel did not find an expert witness that could support the defense's theory that the burn marks must have occurred during

the month Saint-Vil did not have contact with the children. Pet'r's Memo 7.

Under Strickland, the petitioner must show that counsel's performance at trial was constitutionally deficient. See 466 U.S. at 687. The Appeals Court was tasked with reviewing "whether counsel's representation 'fell below an objective standard of reasonableness.'" Hinton v. Alabama, 571 U.S. 263, 272 (2014). Within this prong lies the "duty to investigate." Strickland, 466 U.S. at 690-91. In Strickland, the Supreme Court stated that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690. More specifically, "[t]he selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that . . . is 'virtually unchallengeable.'" Hinton, 571 U.S. at 275 (quoting Strickland, 466 U.S. at 690). In addition, the Supreme Court has stated that "[i]n many instances cross-examination will be sufficient to expose defects in an expert's presentation. When defense counsel does not have a solid case, the best strategy can be to say there is too much doubt about the State's theory for a jury to convict." Harrington, 562 U.S. at 111.

Before Saint-Vil's trial, his counsel,

[11]

> consulted with a medical expert . . . in an attempt to determine . . . when the burns had been inflicted. Because the expert "was not able to offer a helpful opinion that would have excluded [the petitioner] as the potential source of the injuries," trial counsel did not retain the expert for trial.

Saint-Vil, 100 Mass. App. Ct. at *1.  Instead of spending time searching for an effective expert, Saint-Vil's counsel focused on the cross-examination of the Commonwealth's expert witness -- and was successful in so doing.  Id.  In fact, during cross-examination, the defense was able to elicit from the expert "an opinion that the November 7, 2013 SANE photographs 'depicted wounds that had been healed -- had been healing at least for five to seven days.'"  Id.  While this testimony does not preclude the timeline that Saint-Vil was trying to argue, it certainly does not forcefully support the Commonwealth's theory either. Given that "[t]here is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics" it was not unreasonable for the Appeals Court to conclude that counsel's tactical decisions not to present an expert witness and instead focus on cross-examination was not constitutionally deficient.  Harrington, 562 U.S. at 109 (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003)).

[12]

### 2. The Appeals Court was reasonable in concluding that Saint-Vil was not prejudiced.

The Appeals Court was reasonable in concluding that Saint-Vil was not prejudiced by his counsel's decision to find an expert witness that would testify to the theory of the defense. Saint-Vil argues that he was prejudiced because had he put on an expert witness who would buttress the theory already virtually conceded by the Commonwealth, this would create "a reasonable probability of a different result at trial." Reply 4. As previously stated, the Commonwealth's expert witness acknowledged the defense's theory in their own testimony -- the proposed expert would not have presented the factfinder with a new theory. Id. Additionally, the prosecution proved the bulk of its case through testimony of the victims who directly inculpated Saint-Vil. Saint-Vil, 100 Mass. App. Ct. at *3. They did not rely solely on experts to prove Saint-Vil's guilt. Id.

To establish prejudice, Saint-Vil must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The chances "of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 111.

Saint-Vil analogizes his case to Commonwealth v. Millien, 474 Mass. 417 (2016) (Gants, C.J.).  In Millien, the defendant appealed a conviction of assault and battery on a child.  Id. at 418.  At issue was whether certain head injuries sustained by an infant could only be the result of violent shaking or whether those injuries could also be the result of an accidental fall.  Id.  The SJC held that "where the prosecution's case rested almost entirely on medical expert testimony, the defendant was denied his constitutional right to effective assistance of counsel" when his attorney did not retain a medical expert to present the opposing viewpoint of a "heated debate in the medical community."  Id.

The Appeals Court reasonably, and correctly, distinguished Millien from the present case.  The Appeals Court held that Millien "does not stand for the proposition that a defense attorney must consult expert after expert . . . .  Rather, defense counsel in Millien was ineffective for failing to consult with any experts."  Saint-Vil, 100 Mass. App. Ct. at *3. Additionally, in Millien the primary evidence was expert testimony -- there was no victim testimony as the victim was six-months old.  Id.  In this case, the primary evidence was elicited from the victims themselves.  Id.  Thus, the Appeals Court reasonably concluded that an expert would not have provided substantial grounds of defense or have been necessary

to rebut critical expert testimony.  Id. (quoting Commonwealth v. Jacobs, 488 Mass. 597, 606 (2021)).

Considering the "totality of the evidence before [them]", Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012), the Appeals Court reasonably concluded that Saint-Vil was not prejudiced by his attorney's decision to focus resources on cross-examining the Commonwealth's expert and other key fact witnesses when the key evidence came from direct examination of the victims rather than an expert's opinion about burn-tissue healing time.  Saint-Vil, 100 Mass. App. Ct. at *3.

### III. CONCLUSION

The Appeals Court reasonably applied Strickland in holding that the attorney's failure to retain an expert witness did not constitute ineffective assistance of counsel where counsel sought out an expert but made a tactical decision to focus resources on cross-examination of the Commonwealth's witnesses. Thus, Mr. Saint-Vil's petition for a writ of habeas corpus is denied.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[3]

---

[3]   This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.